# EXHIBIT

# 1



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue, Suite 2000
Seattle, WA 98104

January 17, 2019

**VIA REGISTERED U.S. MAIL**

Patrick Shanahan
Acting Secretary of Defense
1400 Defense Pentagon
Washington, DC 20301-1400

Richard V. Spencer
Secretary of the Navy
Office of the Secretary of the Navy
1000 Navy Pentagon, Room 4D652
Washington, DC 20350

Captain Edward "Alan" Schrader
Naval Base Kitsap
120 S. Dewey St, Bldg. 443
Bremerton, WA 98314-5020

**RE: NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT**

Dear Acting Secretary Shanahan, Secretary Spencer, and Captain Schrader:

On behalf of the Attorney General of the State of Washington, we ask that the United States Navy remedy: (1) ongoing violations of the Clean Water Act (CWA) and the Washington State Water Pollution Control Act at the Puget Sound Naval Shipyard, and (2) an imminent and substantial endangerment to the environment under the Resource Conservation and Recovery Act (RCRA). As fully described below, the Navy and you in your official capacities are in violation of Section 301(a) of the Clean Water Act, 33 U.S.C § 1311(a) due to the ongoing release of pollutants to Sinclair Inlet without a National Pollutant Discharge Elimination System (NPDES) permit. These conditions, which include the dumping of approximately fifty dump truck loads of solid waste into Puget Sound, also create an imminent and substantial

endangerment to Washington's environment and threaten marine life in Puget Sound up and down the food chain. On behalf of the citizens of the State of Washington, this letter constitutes Washington's 60-day notice of its intent to file a citizen suit against the Navy pursuant to Section 505 of the CWA, 33 U.S.C. § 1365(a)(2) and Washington's 90-day notice of intent to file a citizen suit under Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B). Put plainly, your assurances to state and federal regulators that your actions would not result in environmental harms were false, as the sediment sampling data you refused to turn over to the state—and that was only uncovered in the course of ongoing litigation—now makes clear. State and federal environmental laws clearly prohibit your actions here, and we intend to pursue those violations vigorously. Because a similar lawsuit is pending in federal district court in the Western District of Washington, *Puget Soundkeeper Alliance, et al. v. U.S. Navy, et al.*, Case No. 3:17-cv-05458-RBL (W.D. Wash.), Washington intends to move to intervene in that lawsuit.[1]

## I. Background

### a. The Clean Water Act

The CWA prohibits the discharge of pollutants by any person to waters of the United States, unless the discharge complies with the provisions of the CWA.[2] Thus, any discharge of pollutants from a point source is unlawful unless the discharger first obtains an NPDES permit in accordance with Section 402 of the CWA.[3] The CWA grants the U.S. Environmental Protection Agency (EPA) authority over the NPDES permitting process but EPA can delegate that authority to states.[4] EPA has delegated NPDES permitting authority to Washington for most permits. Pursuant to a continuing Memorandum of Agreement between Ecology and EPA (renewed in 2018), EPA retains NPDES permitting authority over federal facilities, including the Puget Sound Naval Shipyard at Naval Base Kitsap. Federal facilities must still comply with Washington's Water Quality Standards (Chapter 173-201A WAC), and the incorporated Sediment Management Standards (Chapter 173-204 WAC).[5] These standards, approved by EPA, are designed to protect designated uses of state waters, including human health, aquatic life, and recreation.[6]

The CWA's citizen suit provision authorizes "any citizen" to "commence a civil action on his own behalf … against any person" who violates an effluent standard or limitation of the CWA, which includes the discharge of pollutants not authorized by an NPDES permit.[7] A "citizen"

---

[1] For similar reasons, the Navy also is in violation of Chapter 90.48 RCW and its implementing regulations.
[2] 33 U.S.C. § 1311(a).
[3] *Id.* § 1342.
[4] *Id.* §§ 1251(d), 1342(b).
[5] *Id.* § 1323(a).
[6] *Id.* §§ 1313; WAC 173-201A, 173-204.
[7] 33 U.S.C. § 1365(a),(f).

means "a person or persons having an interest which is or may be adversely affected."[8] The CWA defines "person" to include states.[9] As described in detail below, the Navy's unlawful discharge of pollutants into Sinclair Inlet adversely affects Washington and its residents by further contaminating Sinclair Inlet and Puget Sound. Accordingly, Washington is a "citizen" entitled to file suit under the citizen suit provision of the CWA.[10]

### b. The Resource Conservation and Recovery Act

The Resource Conservation and Recovery Act (RCRA) governs the disposal of solid and hazardous wastes. As part of its comprehensive program of waste management, RCRA allows a person, including states,[11] to file suit against any other person, including the United States,[12] where that person's generation, transport, treatment, storage or disposal of waste may present an imminent and substantial endangerment to health or the environment.[13] As described in detail below, the Navy's unlawful discharge of debris—including materials containing high levels of copper and zinc—into the waters and sediments of Sinclair Inlet creates an imminent and substantial endangerment to the environment.

### c. Sinclair Inlet

Sinclair Inlet is a navigable water body located in southwestern Puget Sound near Bremerton, Washington, and is a water of the United States under the CWA. For over a century, the Navy has owned and operated facilities on the northwest shore of Sinclair Inlet, including the Puget Sound Naval Shipyard where the Navy performs overhaul, maintenance, modernization, repair, docking, and decommissioning of ships and submarines. Over the years, these activities released significant amounts of hazardous waste into Sinclair Inlet, including zinc, copper, cadmium, arsenic, chromium, other metals, and polychlorinated biphenyls (PCBs). As a result, the EPA listed the Puget Sound Naval Shipyard Complex as a Superfund site under the Comprehensive Environmental Response Compensation and Liability Act,[14] and the federal government has spent millions of dollars remediating the sediments at the site.[15]

Due to this heavy contamination, Sinclair Inlet is listed under Section 303(d) of the CWA as an impaired water body for copper and other contaminants, indicating that the waterbody fails to

---

[8] *Id.* § 1365(g).
[9] *Id.* § 1362(5).
[10] *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 614, 616 & nn.5, 9 (1992) ("A State is a 'citizen' under the CWA"); *Cal. ex. rel. Reg'l Water Quality Control Bd., San Diego Region v. Int'l Boundary & Water Comm'n, United States Section*, No. 18CV2050 JM (LL), 2018 WL 6445929, at *3 (S.D. Cal. Dec. 10, 2018) (concluding that political subdivision of State of California "is a 'citizen' entitled to file suit or intervene under the CWA").
[11] 42 U.S.C. § 6903(15).
[12] 42 U.S.C. § 6972(a)(1)(B).
[13] *Id.*
[14] 42 U.S.C. § 9601, et seq.
[15] *See* Puget Sound Naval Shipyard Complex Bremerton, WA, EPA, https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.Cleanup&id=1001107#Done (last visited Jan. 10, 2019).

meet Washington's standards for the protection of aquatic life and human recreation. 33 U.S.C. § 1313(d); WAC 173-201A, 173-204. In addition, the Washington Department of Health has issued a fish consumption advisory for Sinclair Inlet.[16]

### d. Hull Scraping of the Ex-USS INDEPENDENCE into Sinclair Inlet

The Navy provides moorage for decommissioned, non-operational former military vessels at the Puget Sound Naval Shipyard in Kitsap County, Washington, that the Navy plans to tow to recycling facilities for dismantling and disposal.[17] These include the ex-USS INDEPENDENCE, a former aircraft carrier that the Navy decommissioned in 1998 and has since towed to Brownsville, Texas, for scrapping, and the ex-USS KITTY HAWK, a former aircraft carrier that the Navy decommissioned in 2009.[18]

Before towing any of the decommissioned former vessels, the Navy must consult with the National Marine Fisheries Service (NMFS) to ensure that the action is not likely to jeopardize endangered or threatened species under Section 7 of the Endangered Species Act.[19] During the informal consultation process for the ex-INDEPENDENCE, NMFS recommended that the Navy minimize the risk of transporting potentially invasive species by removing barnacles and other marine debris through hull cleaning prior to moving the former vessel, and the Navy agreed to do so.[20] The Navy also agreed to perform certain sediment sampling before and after hull cleaning.[21] However, the Navy declined to adopt NMFS's other recommendations to minimize the effects of the hull cleaning on essential fish habitat and water quality by using a silt curtain and cleaning up the accumulated debris as soon as possible after cleaning.[22]

In late 2016, the Navy announced its plan to perform in-water hull cleaning to remove hull waste on the ex-INDEPENDENCE. Both EPA and the Washington Department of Ecology (Ecology) expressed strong concerns about the Navy's plan to perform this in-water hull cleaning because the cleaning process would remove "anti-fouling" paint containing significant amounts of metals, including copper and zinc, that are toxic to marine life.[23]

---

[16] Fish Consumption Advisories in Wash. State, Wash. State Dep't of Health, https://www.doh.wa.gov/DataandStatisticalReports/HealthDataVisualization/fishadvisory (Marine Area 10) (last visited Jan. 10, 2019).
[17] Letter from Peter Murchie, Manager, Puget Sound Program and Nat'l Estuary Program, to Joshua Frederickson, Office of the Chief of Naval Operations, at 5 (Jan. 20, 2017) [hereinafter EPA Letter].
[18] Declaration of Nora Gluch ¶¶ 9, 11, ECF No. 15-1, *Puget Soundkeeper Alliance, et al. v. Navy et al.*, No. 3:17-cv-05458-RBL (W.D. Wash. Jan. 5, 2018).
[19] 16 U.S.C. § 1536(a)(2).
[20] Navy's Motion to Dismiss or for Summary Judgment 11–12, ECF No. 15, *Puget Soundkeeper Alliance, et al. v. Navy et al.*, No. 3:17-cv-05458-RBL (W.D. Wash. Jan. 5, 2018).
[21] *See* Letter from William Boozer, Director U.S. Navy, Inactive Ships Offices, to Donna S. Wieting, Director, NOAA Office of Protected Resources, at 3–4 (Sept. 1, 2016).
[22] *Id.* at 2–3.
[23] EPA Letter, *supra* n. 14; Letter from Maia D. Bellon, Wash. State Dep't of Ecology Director, to Vice Admiral Thomas Moore, Navy Sea Systems Command (Feb. 6, 2017).

Notably, EPA stated that it "disagrees with the Navy's assertion that the impacts from the hull cleaning would be short-term in nature." As EPA explained "[w]hen metals are released in particulate form they accumulate in bottom sediments and become long-term/legacy pollutants. Given the shallow depth of Sinclair Inlet in this area, pollutants in these sediments can be re-mobilized through currents, prop-wash, and maintenance dredging."[24] To prevent such ongoing contamination, EPA recommended that the Navy perform hull cleaning using a dry dock, which would remove the decommissioned vessel from the water before cleaning, or use other pollution containment technology.[25]

Despite these concerns about the discharge of pollutants into United States waters and the applicability of the CWA, the Navy began in-water hull scraping of the ex-INDEPENDENCE on or around January 6, 2017 without an NPDES permit. This process utilized rotary brushes and high-powered jets of water to pulverize, scrape, and blast debris (including anti-fouling paint and marine growth) from the hull, creating a highly turbid stream of waste. Because the Navy took no steps to contain this debris, these wastes were discharged directly to the water column and sediment of Sinclair Inlet, including the marine habitat in and around where the ex-INDEPENDENCE was moored. The materials discharged through the cleaning include biological materials, paint chips and particles, copper, zinc, other metals (both particulate and dissolved), suspended solids, turbidity, and other debris, all of which are "pollutants" under the CWA.[26] These pollutants were added to and remain in the waters and sediment of Sinclair Inlet. The hull of ex-INDEPENDENCE and the mechanical and manual equipment used to clean the ship constitute point sources under the CWA.[27] The Navy did not obtain an NPDES permit prior to performing this in-water hull scraping and has not obtained an NPDES permit related to the ongoing release of pollutants resulting from the hull cleaning and scraping of the ex-INDEPENDENCE. The Navy also failed to obtain a Section 401 Water Quality Certification from the State in violation of the law.[28] The ex-INDEPENDENCE was then towed to Brownsville, Texas, starting on March 11, 2017.

At the time of the hull cleaning and at all times relevant to the Navy's ongoing CWA violation, the ex-INDEPENDENCE was a floating craft, but not a vessel.[29] The discharge of pollutants from the hull of the ex-INDEPENDENCE to prepare the ship for towing and dismantling, and the continued release of those pollutants into Sinclair Inlet, is not incidental to normal operations of a vessel of the Armed Forces.

---

[24] EPA Letter at 3–4.
[25] EPA Letter at 5.
[26] 33 U.S.C. § 1362(6).
[27] 33 U.S.C. § 1362(14).
[28] 33 U.S.C. § 1341.
[29] *See* Letter from Donna S. Wieting, Director, NOAA Office of Protected Resources, to William Boozer, Director U.S. Navy, Inactive Ships Offices, at 3 (Aug. 5, 2016) (describing the Ex-INDEPENDENCE as "non-operational (no propeller rotation or water intakes/discharges)").

### e. Ongoing Release of Pollutants

Pursuant to direction from NMFS, the Navy conducted sediment sampling in the area around the ex-INDEPENDENCE both before and after the in-water hull scraping occurred. The results of this sampling indicate that significant amounts of metals, particularly copper and zinc, were released to the marine environment by the scraping.[30] The pollutants discharged by the Navy's scraping of the ex-INDEPENDENCE remain uncontained and continue to release dissolved copper, other dissolved metals, and other metals and pollutants to the waters and sediments of Sinclair Inlet. The debris from the Navy's scraping constitutes both an ongoing discharge from the Navy's scraping of the ex-INDEPENDENCE and a distinct point source that continues to discharge dissolved copper, other dissolved metals, and other pollutants to the ambient waters and sediments of Sinclair Inlet.

The ongoing discharge of these pollutants constitutes an ongoing violation of Washington's Water Quality Standards, in addition to further contaminating an area already highly contaminated with metals, including both zinc and copper at or exceeding State Marine Sediment Quality Standards. These harms undermine ongoing efforts to clean up Sinclair Inlet, threaten aquatic life, and can and should be remedied by the removal of the pollutants, capping, or other appropriate means of remediation. The Navy should refrain from performing additional in-water scraping of decommissioned former vessels.

### f. The Ex-USS KITTY HAWK

The Navy is currently engaged in ESA Section 7 consultation with NMFS regarding the Navy's plans to tow and dismantle the decommissioned and non-operational ex-USS KITTY HAWK. As with the ex-INDEPENDENCE it is likely that NMFS will require hull cleaning before transporting and disposing of the ex-KITTY HAWK. Given the Navy's past practice it is also likely that the Navy will use the same unlawful procedures for the ex-KITTY HAWK and scrape the hull materials in-water without the use of a dry dock or containment technology, resulting in the unlawful discharge and continued release of harmful pollutants to Sinclair Inlet without an NPDES permit.

## II. CWA Violation

As stated in detail above, the Navy is in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), because the Navy's cleaning and scraping of the Ex-INDEPENDENCE constitutes an ongoing discharge of pollutants, including biological materials, paint chips and particles, copper, zinc, other metals (both particulate and dissolved), suspended solids, turbidity, and other debris, from point sources to waters of the United States without an NPDES permit

---

[30] Despite the Navy's legal obligation to report these results to Ecology and Ecology's repeated requests for the results of this work, the Navy refused to provide Ecology with the sediment sampling data. Ecology only recently obtained a copy of the sediment sampling data when it was disclosed to the plaintiffs in *Puget Soundkeeper Alliance, et al. v. Navy, et al.*, No. 3:17-cv-05458-RBL (W.D. Wash.).

issued under Section 402 of the CWA, 33 U.S.C. § 1342. The point sources for these pollutants include the hull of the Ex-USS INDEPENDENCE, any mechanical or manual equipment used to clean the hull, and the debris scraped from the hull that remains uncontained in Sinclair Inlet and continues to release dissolved copper, other dissolved metals, and other metals and pollutants to the waters and sediment of Sinclair Inlet.[31]

In addition to being ongoing, the Navy's violations are reasonably likely to recur. The Navy's Puget Sound Naval Shipyard is one of only three Naval Inactive Ship Maintenance Facilities (NISMFs) in the country. The ex-KITTY HAWK (another decommissioned former "supercarrier") is currently slated for disposal in a manner identical to that of the ex-INDEPENDENCE. The Navy is likely to conduct similar hull cleaning and hull debris disposal activities of the ex-KITTY HAWK and other ships in the future and is likely to do so without obtaining NPDES permit authorization.

### III. RCRA Imminent and Substantial Endangerment

As stated above, the Navy's disposal of large amounts of debris from the ex-INDEPENDENCE to the waters and sediments of Sinclair Inlet—as well as the Navy's plan to conduct similar actions in the future—creates an imminent and substantial endangerment to the environment. Specifically, the addition of high concentrations of metals, including copper and zinc, into the marine environment causes both acute and chronic toxicity to a wide range of marine life. Furthermore, the addition of up to 730 cubic yards of debris from the ex-INDEPENDENCE, in the form of turbidity, suspended solids, and other debris, smothers the benthic zone and its associated habitat underneath and around the area where hull scraping occurred. These actions cause continuing harms to organisms up and down the food chain.

### IV. Conclusion

For the foregoing reasons, we ask that the Navy remedy its ongoing violations of the CWA and Washington law, and abate the imminent and substantial endangerment under RCRA, at the Puget Sound Naval Shipyard by removing from Sinclair Inlet the debris from the ex-INDEPENDENCE and taking any other action necessary to stop and remediate the ongoing discharge of pollutants and related environmental harm caused by the Navy's in-water hull cleaning activities. If the Navy fails to remedy its ongoing CWA violation and its creation of an imminent and substantial endangerment under RCRA within the associated timeframes, Washington intends to intervene as a plaintiff in *Puget Soundkeeper Alliance, et al. v. U.S. Navy, et al.*, Case No. 3:17-cv-05458-RBL (W.D. Wash.), and seek declaratory and injunctive relief and such other relief as permitted by law.[32]

---

[31] 33 U.S.C. § 1362(14).
[32] In the event intervention is not granted by the Court, Washington intends to file a separate action.

If you have any questions regarding this letter or believe anything in this letter is inaccurate, please contact us.

Sincerely,

KELLY T. WOOD
Assistant Attorney General
AURORA JANKE
Special Assistant Attorney General
Counsel for Environmental Protection
Washington State Attorney General's Office
800 5th Ave Suite 2000
Seattle, WA 98104-3188
Phone: (206) 326-5493
       (206) 233-3391
Email: kelly.wood@atg.wa.gov
       auroraj@atg.wa.gov

*Attorneys for the State of Washington*


**KTW/TRK**
**cc: by registered mail**

Andrew Wheeler
Acting Administrator, Environmental Protection Agency
Office of the Administrator, M/C 1101A
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Chris Hladick
Region 10 Administrator, Environmental Protection Agency
U.S. EPA, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

Michelle Pirzadeh
Deputy Region 10 Administrator, Environmental Protection Agency
U.S. EPA, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

Maia Bellon, Director
Washington State Department of Ecology
PO Box 47600
Olympia, WA 98504-7600