The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE et al., | NO. 3:17-cv-05458-RBL |
| Plaintiffs, | CONSENT DECREE |
| and | |
| STATE OF WASHINGTON, | |
| Plaintiff-Intervenor | |
| v. | |
| UNITED STATES DEPARTMENT OF THE NAVY et al., | |
| Defendants. | |

WHEREAS, this Consent Decree is made between Plaintiffs Puget Soundkeeper Alliance, Washington Environmental Council, and the Suquamish Tribe (collectively, "Plaintiffs"), Intervenor the State of Washington, and Defendants, Mark Esper, Secretary of Defense; Thomas B. Modly, Acting Secretary of the Navy; Richard G. Rhinehart, Commanding Officer of Naval Base Kitsap; and the United States Navy (collectively,

"Defendants" or the "Navy").  Plaintiffs, the State of Washington, and the Navy are collectively referred to as the "Parties";

WHEREAS, in this lawsuit, Plaintiffs and the State of Washington allege, among other things, that the Navy violated the Clean Water Act by discharging pollutants without a Clean Water Act section 402 permit, 33 U.S.C. § 1342, when the Navy conducted underwater hull cleaning of the inactive ship, ex-INDEPENDENCE, in Sinclair Inlet of Puget Sound;

WHEREAS, the Navy conducted the referenced hull cleaning of ex-INDEPENDENCE in accordance with the consultation with the National Marine Fisheries Service pursuant to the Endangered Species Act for the towing of ex-INDEPENDENCE, in order to minimize the risk of invasive species transfer resulting from the towing of ex-INDEPENDENCE for dismantling to a location in Texas in 2017;

WHEREAS, Plaintiffs and the State of Washington contend that the alleged unauthorized discharges are ongoing, that the Navy may in the future conduct additional underwater hull cleaning of other inactive Navy ships in Puget Sound prior to towing, and that the discharges from ex-INDEPENDENCE may have caused, and may continue to cause, significant adverse effects to the waters and wildlife in Sinclair Inlet;

WHEREAS, the Navy contends that the challenged underwater hull cleaning meets the requirements of the Clean Water Act under the Uniform National Discharge Standards and a discharge permit is not required because the National Pollutant Discharge Elimination System permitting requirement does not apply to underwater hull cleaning by the Navy, and that no significant environmental harm has been, or is currently being, caused by the referenced underwater hull cleaning;

WHEREAS, six inactive ships (including one aircraft carrier) currently located in the Puget Sound (ex-KITTY HAWK (CV 63); ex-RODNEY M. DAVIS (FFG 60); ex-INGRAHAM (FFG 61); ex-DUBUQUE (LPD 8); ex-BRIDGE (TAOE 10); and ex-RAINIER (TAOE 7)) may in the future require underwater hull cleaning in Puget Sound prior to being towed to another location to minimize the risk of invasive species transfer via the hull and thereby to comply with the March 4, 2019 Programmatic Biological and Conference Opinion on the Towing of Inactive U.S. Navy Ships from their Existing Berths to Dismantling Facilities or other Inactive Ship Sites;

WHEREAS, in accordance with applicable regulations, if hull cleaning is required, dry-docking is the preferred hull cleaning method for all inactive ships located in Sinclair Inlet prior to their relocation for dismantling; and

WHEREAS, the Parties intend to resolve this lawsuit without the adjudication or admission of any issue of fact or law, in a manner that addresses the environmental concerns raised by Plaintiffs and the State of Washington and accommodates the Navy's operational needs.

NOW THEREFORE, it is hereby ordered, adjudged, and decreed as follows:

1) For the ten-year period beginning on the effective date of this Consent Decree, the Navy shall neither conduct underwater hull cleaning in Puget Sound on the six inactive ships referenced above, nor any inactive aircraft carrier brought to Puget Sound during that ten-year period.

2) This ten-year moratorium on underwater hull cleaning, set forth in Paragraph 1 above, shall not apply to underwater cleaning of limited portions of the hull of any inactive

ship referenced in Paragraph 1 to prepare that ship to be dry-docked at a location in Puget Sound, provided that this cleaning is the minimum necessary to dock and safely seat that ship on blocks during such dry-docking.  This ten-year moratorium shall also not apply to routine hull integrity testing, provided the cleaning is the minimum necessary to conduct such operations.  The Navy agrees to continue to use best management practices for the cleaning of limited portions of the hull of the inactive ships referenced in Paragraph 1 for dry-docking, including trimming of biological growth to approximately one inch of the hull to dock and safely seat the ship on blocks during dry-docking.

   3)  If, within the three-year period after the expiration of the ten-year period identified in Paragraph 1, the Navy intends to conduct underwater hull cleaning of ex-KITTY HAWK, or of any other inactive aircraft carrier brought to Puget Sound during the ten-year period identified in Paragraph 1, the Navy shall provide Plaintiffs and the State of Washington with 180 days advance notification before initiating such underwater hull cleaning.  This notice requirement shall not apply to underwater cleaning of limited portions of the hull of such inactive aircraft carriers to prepare that inactive aircraft carrier to be dry-docked at a location in Puget Sound, provided that this cleaning is the minimum necessary to dock and safely seat that ship on blocks during such dry-docking, or to conduct routine hull integrity testing in Puget Sound for any inactive aircraft carrier subject to such testing, provided that this cleaning is the minimum necessary to conduct such operations.

   4)  The Navy shall provide Plaintiffs and the State of Washington, either at in-person meetings or through telephonic means, as the Parties may agree, with three status updates on underwater hull cleaning technology advancements, to occur on dates agreed to by

the Parties that are approximately three years, six years, and nine years after the effective date of this Consent Decree.

5) On the floor of Sinclair Inlet, at the location specified in Attachment A, portions of which underlie the location where the Navy conducted underwater hull cleaning of ex-INDEPENDENCE, the Navy shall no later than the end of calendar year 2022 complete the construction of a thin layer placement of clean sand, no less than 10 cm thick, in accordance with the requirements in Attachment A.  The Navy shall provide Plaintiffs and the State of Washington with written certification that this work has successfully satisfied the requirements in Attachment A and copies of as-built engineering drawings of the thin layer placement, within 30 days of that written certification of satisfaction.

6) Plaintiffs and the State of Washington reserve the right to seek an award of reasonable attorneys' fees and costs under the Clean Water Act fee-shifting provisions, and the Navy reserves the right to contest any such fees and costs claimed by Plaintiffs and the State of Washington.  In the event that such claims for fees and costs cannot be resolved through a separate settlement within 120 days after the effective date of this Consent Decree, Plaintiffs and the State of Washington may file a motion for such fees and costs no later than 150 days of the effective date of this Consent Decree.

7) No provision of this Consent Decree shall be interpreted as or constitute a commitment or requirement that the United States or the Navy obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341.

8) The Parties recognize that the Navy may be required to obtain a permit under Section 404 of the Clean Water Act to construct the thin layer placement required by

Paragraph 5.  This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any law for construction of the thin layer placement.  Provided that the Navy has pursued with reasonable diligence any such required permit, or any other necessary approvals by other State or Federal agencies, any delay in securing necessary permits or approvals that prevents the Navy from timely satisfying the requirements of this Consent Decree shall not constitute a failure to comply with the terms of this Consent Decree.  Plaintiffs represent that they shall not oppose or object to the issuance of any such necessary permit or other approval issued by any agency, and the State of Washington represents that it shall not oppose or object to the issuance of any such necessary permit or approval by any agency other than an agency of the State of Washington, so long as such permit application and/or federal approval complies with the terms of this Consent Decree and Attachment A.  By this stipulation not to oppose or object, Plaintiffs, in any agency proceeding, and the State of Washington, in any proceeding by an agency that is not part of the State of Washington, shall not seek to impose any requirements or mitigation beyond the requirements identified in Attachment A to this Consent Decree.  The Parties recognize that the Navy may be required to obtain a water quality certification from the State of Washington under Section 401 of the Clean Water Act to construct the thin layer placement required by Paragraph 5.  The State of Washington shall make best efforts to facilitate the timely issuance of any permits or other approvals necessary to construct the thin layer placement.

   9)  The Parties recognize that the possibility exists that circumstances outside the reasonable control of the Navy could delay compliance with the requirements in this

Consent Decree. Should a delay occur due to circumstances outside the reasonable control of the Navy, to the extent practicable, the Navy will provide Plaintiffs and the State of Washington 30-days advance written notice of the basis for the circumstances and estimated delay, notice of the steps that will be taken to accomplish the obligation, and notice of the projected time that will be required to resolve the delay. Any resulting failure to meet the requirements set forth in this Consent Decree that is beyond the reasonable control of the Navy and that is agreed to by Plaintiffs in writing shall not constitute a failure to comply with the terms of this Consent Decree. Notwithstanding whether advance notice has been provided by the Navy, if the Parties dispute whether the failure to comply with the requirements in this Consent Decree were due to circumstances outside the reasonable control of the Navy, they will submit the matter to the Court for resolution.

10) Before Plaintiffs or the State of Washington may file a motion in court to enforce any requirement of this Consent Decree, that party shall provide the Navy with no less than 30 days advance written notice of the basis for any alleged non-compliance and an opportunity to meet to discuss this matter, unless filing such a motion to enforce is necessary to prevent imminent and substantial harm.

11) The Parties may jointly request the Court to modify this Consent Decree. Before one or more of the Parties files a motion to modify this Consent Decree, they shall meet with all the Parties in an effort to resolve the matter or otherwise reach agreement on any required modification no less than 30 days before filing such a motion.

12) This Consent Decree is the product of negotiation by the Parties. All Parties contributed to its drafting. In any dispute over the meaning of any provision of this Consent

Decree, the Parties shall be treated as having contributed equally to the drafting of that provision.

13) This Consent Decree represents the full and final resolution of any and all claims, known or unknown, that have been, could have been, could now be, or could hereafter be asserted by Plaintiffs or the State of Washington against the Navy in connection with underwater hull cleaning of ex-INDEPENDENCE, or in connection with underwater hull cleaning of any inactive ship referenced in Paragraph 1 conducted during the ten-year period referenced in Paragraph 1, by the Navy in Puget Sound, including, but not limited to, any claims that the Navy has violated, is violating or hereafter will violate the requirements of the Clean Water Act, the Resource Conservation and Recovery Act, and any other federal, state, or local laws  Plaintiffs and the State of Washington hereby covenant not to bring any judicial or administrative enforcement action under any federal, state, or local law or regulation against the Navy, its officials or employees, or its contractors or their subcontractors, their officials, or employees, in connection with underwater hull cleaning of ex-INDEPENDENCE and of any inactive ship referenced in Paragraph 1 above for which underwater hull cleaning is conducted during the ten-year period referenced in Paragraph 1.

14) The Parties agree that this Consent Decree is fair, reasonable, and in the public interest.  This Consent Decree was negotiated and executed in good faith and at arm's length and is a fair and equitable compromise of disputed claims.  This Consent Decree is not and shall not constitute or be construed as an admission by the Navy of any factual allegations made by Plaintiffs or the State of Washington in this action, an admission of liability, or an admission of any other kind or character whatsoever by the Navy.  Neither this Consent Decree

nor the Parties' performance under this Consent Decree is intended to have, and shall not be deemed to have, any evidentiary or precedential effect in any other judicial or administrative action involving claims asserted against the Navy.

15) This Consent Decree shall be governed by and construed under federal law.

16) This Consent Decree constitutes the entire agreement between the Parties with respect to the matters covered herein. All prior discussions, drafts, and writings are superseded by this Consent Decree and may not be used to vary or contest the terms of the Consent Decree.

17) The individuals signing this Consent Decree on behalf of the Parties hereby certify that they are authorized to bind their respective party to this Consent Decree. This Consent Decree may be executed by multiple signature pages.

18) This Consent Decree shall be effective upon the date of its entry by the Court.

19) The Consent Decree requirements relevant to the following events shall terminate (a) for the work to be performed under Paragraph 5, when all work and subsequent notice to Plaintiffs under Paragraph 5 has been completed, (b) for the ten-year period referenced in Paragraph 1, when the ten-year period referenced in Paragraph 1 has expired, (c) for the status updates to be provided under Paragraph 4, when all three status updates on underwater hull cleaning technology advancements have been completed, and (d) for the notice required under Paragraph 3, when notice of intent to conduct in-water hull cleaning of ex-KITTY HAWK (and any other inactive aircraft carrier brought to Puget Sound during the ten-year period identified in Paragraph 1) has been provided, or ex-KITTY HAWK (and any other inactive aircraft carriers brought to Puget Sound during the ten-year period identified in

Paragraph 1) are no longer located in Puget Sound, or the three-year period in Paragraph 3 has expired.  When the conditions in (a) through (d) have occurred, the entire Consent Decree shall terminate.

20)   All certifications, deliverables, modifications, notices, notifications and requests specified in this Consent Decree must be in writing unless otherwise specified.  Whenever, under this Decree, notice is required to be given, or a document is required to be sent, by one Party to another, it must be directed to the person(s) specified below at the address(es) specified below.  Any Party may change the person and/or address applicable by providing notice of such change to all Parties.  All notices under this Section are effective upon receipt, unless otherwise specified.  Except as otherwise provided, written notice to a Party by regular mail in accordance with this Section satisfies any notice requirement of the Decree regarding such Party.

**As to the Navy**:

David J. Kaplan
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington D.C. 20044
david.kaplan@usdoj.gov

Karrin H. Minott
Department of the Navy
Office of the General Counsel, Naval Litigation Office
720 Kennon Street SE, Building 36, Room 233
Washington Navy Yard, DC  20374-5013
karrin.minott@navy.mil

**As to Puget Soundkeeper Alliance:**

Katelyn Kinn
Staff Attorney

Puget Soundkeeper Alliance
130 Nickerson Street Suite 107
Seattle WA 98109
katelyn@pugetsoundkeeper.org

Meredith Crafton, Esq.
Smith & Lowney, PLLC
2317 E. John St.
Seattle WA 98112
meredith@smithandlowney.com

**As to the State of Washington:**

Kelly T. Wood
Washington Office of the Attorney General
Counsel for Environmental Protection Unit
800 5th Avenue, Suite 2000
Seattle, Washington 98104
(206) 326-5493
kelly.wood@atg.wa.gov

**As to the Suquamish Tribe:**

Richard Brooks
Natural Resources Director
P.O. Box 498
18690 Suquamish Way
Suquamish, WA 98392
rbrooks@suquamish.nsn.us

Melody L. Allen
Office of Tribal Attorney
P.O. Box 498
18690 Suquamish Way
Suquamish, WA 98392
mallen@suquamish.nsn.us

**As to Washington Environmental Council**

Mindy Roberts
Puget Sound Program Director
Washington Environmental Council

11

CONSENT DECREE

NO.  3:17-CV-05458-RBL

1402 Third Avenue, Suite 1400
Seattle, WA 98101
mindy@wecprotects.org

Meredith Crafton, Esq.
Smith & Lowney, PLLC
2317 E. John St.
Seattle WA 98112
meredith@smithandlowney.com

21) This Court retains jurisdiction over this Consent Decree until it is terminated pursuant to paragraph 19.

22) This Consent Decree and its Attachment A constitute the final, complete, and exclusive agreement and understanding among the Parties regarding settlement embodied in this Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Decree. Upon entry of this Consent Decree by the Court, this Decree shall constitute a final judgment between and among the Parties. The Court finds that there is no just reason for delay and therefore, enters this judgment as a final judgment under Fed. R. Civ. P 54 and 58.

IT IS SO ORDERED, this _____ day of _____ 2020.

_____
United States District Court Judge

Signature Page for Consent Decree

**FOR DEFENDANTS:**

Jeffrey Bossert Clark
Assistant Attorney General
Environment & Natural Resources Division

Brian T. Moran
United States Attorney

/s/ *David J. Kaplan*       Dated: 01/29/2020
David J. Kaplan
Attorneys for Federal Defendants
United States Department of Justice
Environmental Defense Section P.O. Box 7611
Washington, DC 20044
(202) 514-0997
David.kaplan@usdoj.gov

Brian Kipnis
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

**FOR PLAINTIFFS PUGET SOUNDKEEPER ALLIANCE and WASHINGTON ENVIRONMENTAL COUNCIL**

/s/ *Richard Smith*       Dated: 01/29/2020
Richard Smith
Meredith Crafton
Smith & Lowney, PLLC
2317 E. John St.,
Seattle, WA 98112
(206) 860-2883

**FOR PLAINTIFF THE SUQUAMISH TRIBE**

/s/ *Melody Allen*       Dated: 01/29/2020
Melody Allen
Maryanne Mohan
P.O Box 498

| | |
|---|---|
| 1 | Suquamish, WA 98392 |
| | (360) 598-3311 |
| 2 | Attorneys for Plaintiff Suquamish Tribe |
| 3 | **FOR INTERVENOR THE STATE OF WASHINGTON** |
| 4 | ROBERT W. FERGUSON |
| | Attorney General |
| 5 | |
| 6 | /s/ *Kelly T. Wood*                    Dated: 01/29/2020 |
| | Kelly T. Wood |
| 7 | Aurora Janke |
| | Assistant Attorneys General |
| 8 | Washington Attorney General's Office |
| | Counsel for Environmental Protection Unit |
| 9 | 800 5th Ave., Suite 2000 |
| | Seattle, Washington 98104 |
| 10 | (206) 326-5493 |

14

CONSENT DECREE

NO. 3:17-CV-05458-RBL

**Attachment A: Thin Layer Placement**

Thin Layer Placement Overview:

Six to nine inches of clean sand will be placed directly under the ex-INDEPENDENCE in-water footprint plus a buffer. There will be some mixing of sediment and the sand during placement due to the presence of soft sediment. Placement will result in a vertical profile of existing sediment, overlain with a mixture of existing sediment and sand, and the surface will be clean sand. The intent of this placement is to provide a clean layer of material in the biologically active zone (generally considered to be the top 10 cm in Puget Sound).

Physical Extent of Thin Layer Placement:

The attached figure depicts the geographic extent of the thin layer placement, which includes the buffer covers 8.03 acres. As depicted on the attached figure, the placement will extend to:

- the toe of the riprap on the north end;
- the western edge of Mooring G on the northeast side;
- the projection of the flight deck of ex-KITTY HAWK onto the sediment surface on the southeast side;
- the edge of the enhanced natural recovery area on the west side; and
- 100 feet south from the projection of the flight deck of ex-INDEPENDENCE onto the sediment surface on the south side.

Suitability of Material:

The gradation and physical properties of the proposed clean sand material for the thin layer placement will conform with WSDOT Standard Specification 9-03.1(2) B for "Class 2 Fine Aggregate." Material will be natural sand and will be sourced from an approved supplier listed in the most current WSDOT Aggregate Source Approval Report (https://www.wsdot.wa.gov/Business/MaterialsLab/ASA.htm).

| SAND MATERIAL | |
|---|---|
| U.S. Standard Sieve Size | Percent Passing by Dry Weight |
| 3/8" | 99-100 |
| U.S. No. 4 | 95-100 |

| | |
|---|---|
| U.S. No. 16 | 45-80 |
| U.S. No. 50 | 10-30 |
| U.S. No. 100 | 2-10 |
| U.S. No. 200 | 0-2 |

Verification of Placement Extent and Thickness:

To ensure thickness of the thin layer placement upon installation, the Navy will use a combination of appropriate verification methods, such as multibeam hydrographic surveys, sub-bottom profiling, diver hand cores and/or placement of grade stakes and post-placement diver surveys to ensure that there is a minimum of 10 cm of clean sand overlying existing sediment surface within the footprint of the thin layer placement. If verification results indicate areas that do not meet the minimum thickness criteria, the Navy will require the placement of additional material and will not release the contractor of its obligations until verification of the required thickness and extent of the thin layer placement.

Best Management Practices (BMPs):

*Environmental BMPs*:
- All mechanized equipment shall be maintained in proper operating condition, with equipment inspections occurring at the start of each workday. Equipment found to be leaking hydraulic fluid or any type of petroleum product shall be removed from the site for maintenance or repair.
- Material barge(s) will be inspected by the Navy Representative upon delivery to the project site to determine whether there are significant leaks that could contribute to the exceedance of the turbidity criteria as determined by the Navy Representative. Contractor shall promptly repair any such leaks as identified by the Navy Representative.
- Drip pads or pans shall be placed under mechanized equipment to contain any potential leaks of petroleum products or hydraulic fluids.
- To the extent possible, hydraulic fluids in equipment shall be replaced with vegetable-based fluids.
- A spill kit shall be kept on each work vessels to contain any potential petroleum or hydraulic fluid spills that might occur.

CONSENT DECREE

NO. 3:17-CV-05458-RBL

- No project-related debris or wastes shall be allowed to enter the water. The Contractor shall recover and remove any debris or waste that accidently enters the water.
- Barges and work vessels shall not be aground on the substrate. Work barges will be held on station with spuds or anchors.

*Thin Layer Placement BMPs*:
- A one-half acre test plot is required validate placement methods prior to placement on the remaining acreage. The test plot shall be verified by methods listed above.
- The target placement thickness is 9" in at least two offset lifts.
- Placement equipment shall not contact the sediment bed at any time during placement.
- Thin layer placement material shall not be released from above the water surface.
- Contractor equipment shall not disturb thin layer placement plots in any way after material has been placed.

*Verification BMPs*:
- Thin layer placement thickness and extent shall be verified using multibeam hydrographic surveying, sub-bottom profiling, sediment profile imaging, and/or diver surveys.
- Hydrographic surveying shall be performed in accordance with NAVFAC NW Standard Operating Procedure for Multibeam Hydrographic Surveying at NBK Bremerton, current version.
- Sub-bottom profiling, if used, shall be performed in accordance with NAVFAC NW Standard Operating Procedure for Sub-Bottom Profiling at NBK Bremerton, current version.
- Material placed within each plot shall be weight equivalent to a 9-inch nominal layer for the area based on scale tickets and/or barge draft during placement.
- The thickness of placed material shall be 4 inches or greater in all locations.
- For any areas of thin placement (less than 4 inches) noted during the verification process, the Navy Representative will direct Contractor to place additional material as necessary. Additional placement areas shall be re-verified.
- The Contractor shall provide as-built drawings in electronic format in both AutoCAD, Release 2010 or newer, and in PDF format.

